IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GORDON CHRISTENSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4060-CV-C-NKL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| JAMES NICHOLSON, Secretary of the ) | |
| Department of Veterans Affairs, ) | |
| and KENT HILL, Director, Kansas City VA ) | |
| Medical Center (589), ) | |
| | |
| Defendants. | |

ORDER

Pending before the Court is Defendants' Motion to Affirm Administrative Decision [Doc. # 34]. For the reasons set forth below, the Motion will be treated as one for Summary Judgment and denied.

**I.    Factual Background**

The following facts have are drawn from Defendants' Motion and the stipulated administrative records filed by Defendants [Doc. # 32, hereinafter "A.R."].[1] Since Plaintiff Gordon Christensen ("Christensen") does not deny any of the facts asserted in

---

[1]Plaintiff also filed a Submission of Administrative Record [Doc. # 33]. Neither party references the documents contained in Plaintiff's submission in their briefing, and none of the documents appears relevant to the Motion before the Court.

1

Defendants' Motion, or contest any of the documents contained in Defendants' Submission of the A.R., the Court will accept them as true.

Christensen was employed by the Department of Veterans Affairs as the Associate Chief of Staff for Research and Development at the VA Hospital in Columbia, Missouri, when he signed a "Special Pay Agreement" with the VA on October 8, 2002. Under the terms of the two year agreement, which became effective October 20, 2002, Christensen expressly agreed to refund his special pay in the event that he should voluntarily leave the VA before October 19, 2004, unless his leaving was "due to circumstances which [were] beyond [his] control." (A.R. 1.) By Memorandum dated April 15, 2003, Christensen notified the VA Hospital Director Gary Campbell ("Campbell") that the Faculty Council of the University of Missouri–Columbia had elected him to be their Chair, starting August 1, 2003. Wishing to accept the Chairmanship, Christensen requested early retirement and a waiver of his obligation to pay back his special pay under the Special Pay agreement. (A.R.3.) By memorandum dated April 17, 2003, Campbell "grant[ed] approval of [Christensen's] request for voluntary early retirement with a waiver of the special pay back pay." (A.R. 4.)

The correspondence between Christensen and Campbell was forwarded to VA Human Resources Manager Diana J. Perkins ("Perkins"). By memorandum dated April 22, 2003, Perkins informed Campbell that the amount of Christensen's Special Pay was greater that $15,000 and could only be approved by the Under Secretary per the VA Handbook 5007, Part IX. (A.R. 7-15.) Campbell forwarded this information to

2

Christensen by Memorandum dated April 28, 2003. (A.R. 16.) Christensen then sent a formal request for a waiver of his obligation to pay back his Special Pay directly to Perkins on May 4, 2003, stating the following four reasons for his release from the obligation: (a) the purpose of the Special Pay refund liability was to ensure dependable clinical services, which he had done for 20 years; (b) he could not have anticipated his election as Chair of the Faculty Council when he signed the Special Pay Agreement in October 2002, and that accepting the position would be advantageous to the VA as it would allow him to raise the Hospital's profile within the University; (c) he had already completed his clinical duties for the year so his departure would not interrupt patient services; and (d) his early departure would not affect Research and Development since it had recently received two large grants, and his departure would allow the Department to attract a replacement with research funding. (A.R. 17.) On the same day, Christensen also sent a memorandum to Campbell requesting permission to proceed with his application for early retirement, "providing that I might be excused of repaying the 'special pay' liability." (A.R. 18)

On May 5, 2003, Christensen spoke with VA Human Resources Specialist Carol Malloy regarding his application for Early Out Retirement and Special Pay Liability. Malloy verified that Christensen had received a copy of the waiver regulations, and explained that because his Special Pay liability was in excess of $15,000 that it would have to be approved by the Under Secretary. She further advised him that his request for a waiver of his Special Pay liability could not be made until he actually breached his

contract and a Bill of Collection was issued. Finally, she asked Christensen whether he would still be interested in taking early retirement if the waiver of his Special Pay liability were not approved. Christensen indicated that he probably would still opt to leave, but "he would be very angry about it." (A.R. 19.) Malloy spoke with Christensen again a couple of days later, confirming that he wished to apply for early retirement knowing that he would not get the waiver issue resolved until after he retired. (A.R. 20.)

In a Report of Contact, dated May 22, 2003, VA Hospital Chief of Staff William Patterson reported discussing Christensen's retirement with the Director at the Senior Management Meeting. He reported telling the Director that he twice met with Christensen to discuss his retirement as well as decreasing his time appointment to avoid violating his Special Pay Agreement. Patterson reported that he had told Christensen that such arrangements had been made in the past and that the hospital "could accommodate his wishes/needs by having him perform C&P or New Patient exams even on the weekends until his contract expired." (A.R. 22.)

By letter dated July 23, 2003, VA Acting Human Resources Manager Tom Amerson informed Christensen that he would forfeit all his special pay if he voluntarily separated from the VA prior to October 20, 2003. He would be billed for the special pay liability and could then dispute the existence and the amount of the debt, and/or request a waiver of his liability. If he wished to request a waiver, he must do so in writing within 210 days of receiving notice of his Special Pay liability. The letter should be addressed the Harry S Truman VA Medical Center in Columbia, Missouri, and provide an

4

explanation of why he left the VA before the expiration of the term of his Special Pay Agreement. Amerson further advised Christensen that a waiver could only be granted by law if his separation from the VA was due to circumstances beyond his control. Finally, Amerson advised Christensen that if he did not request a waiver, or a waiver was denied, the VA would seek collection of the Special Pay liability. (A.R. 23-24.)

Christensen resigned from the VA, effective July 31, 2003. (A.R. 26.) On August 21, 2003, the VA began collection efforts on the special pay owed by the Plaintiff. (A.R. 26.) By letter dated September 15, 2003, Christensen was notified of the amount of Special Pay liability the VA sought to collect and advised that he could dispute the debt, or the amount of the debt, in writing within 30 days. He was also advised of his right to request a waiver by submitting in writing an explanation of why he believed the indebtedness was not his fault. If he failed to do so within 30 days, the VA would begin to withhold 15 percent of his disposable pay. He could still request a waiver for up to three years, though the 15 percent withholding would continue. (A.R. 32-33.)

By letter dated September 18, 2003, previous counsel for Christensen notified Truman VA Hospital Director Campbell that Christensen disputed the existence of the debt and, in the alternative, requested a waiver of the debt, stating his reasons for both. The letter noted that other doctors who had left early were not assessed any Special Pay liability and that Christensen himself had been told by Director Campbell that the Hospital would support his early departure and excuse his Special Pay liability. Christensen's counsel suggested that the assessment of Special Pay liability in his case

5

was in retaliation for public disclosures made by Christensen from 1992 to 1995 regarding the alleged murders at the VA Hospital by a former VA nurse. (A.R. 36-38.)

By Memorandum dated October 6, 2003, Campbell forwarded Christensen's waiver request to the Under Secretary for Health. The Memorandum explained that waiver of Special Pay liability could only be granted when "the failure to complete [the Special Pay period] is the result of circumstances beyond the control of the physician." The memo further explained the grounds on which Christensen sought the waiver but concluded that, "Following the strict statutory criteria outlined in 38 U.S.C. § 7431 et seq., Dr. Christensen's request does not have merit. The reasons enunciated do not support a determination that Dr. Christensen was separated due to circumstances beyond his control." (A.R. 39-41.) On October 9, 2003, Campbell sent a letter to Christensen's counsel informing them that the dispute and waiver request had been forwarded to the Under Secretary, but that the statutory guidelines governing waiver suggested that the waiver would be denied. (A.R. 44-45.)

On February 6, 2004, Under Secretary for Health Robert H. Roswell denied Christensen's waiver request on the grounds that he had voluntarily left his VA position to pursue another professional opportunity. Accordingly, Truman VA Hospital Chief Financial Officer C.R. Russell notified Christensen by letter dated February 10, 2004, that he owed the VA $30,495.65 in Special Pay Refund Liability. Attached was a form for Christensen to complete if he wished to repay the debt in installments. (A.R. 48-49.)

6

On March 11, 2004, the Kansas City VA Medical Center (589) sent Christensen a second demand letter indicating that he had not responded to several previous notices regarding his outstanding Special Pay Refund liability. The letter stated,

> Unless a hearing is requested as explained below, you have 30 days from the date of this letter to pay the debt in full, establish a satisfactory repayment plan, or present evidence that all or part of this indebtedness is not past due or legally enforceable. If we do not hear from you, we will report your debt to the U.S. Department of the Treasury for the Treasury Offset Program (TOP). . . .
>
> If you are or become a Federal Employee, your current net disposable pay is subject to offset if you do not pay your debt or take other action described above. Under the TOP, the U.S. Treasury will deduct up to 15% of your disposable pay, beginning in the pay period that your debt is submitted to TOP. This deduction will continue every pay period until your debt, including interest, penalties and other costs, is paid in full.
>
> You are entitled to a hearing to dispute the amount of your payroll deduction. To request a hearing, you must file a written request for a hearing no later that 15 days from the date of this letter to prevent referral of your debt to the Treasury Department. Written requests for a hearing must be sent to the above address.

The "above address" on the letter was Kansas City VA Medical Center, 4801 Linwood Blvd., Kansas City, MO 64128-2228. (A.R. 52.)

In a letter dated April 8, 2004, the Chief Financial Officer of Truman VA Hospital in Columbia, Missouri, informed Christensen that he now owed the VA $31,477.98. The letter also warned that if Christensen did not respond to the February 10 letter demanding payment or a payment plan, his debt would be deducted from his retirement payments and he would continue to be charged interest. The letter did not mention the March 11, 2004, letter Christensen received from the Kansas City VA Medical Center. (A.R. 53.)

7

On January 18, 2005, Christensen's present counsel sent letters to Charles A Wilson, at the Department of the Treasury Financial Management Services, in Birmingham Alabama, and to the Kansas City VA Medical Center, on Linwood Blvd., Kansas City, Missouri, indicating Christensen's "final request" for a hearing. The letters stated that Christensen's previous counsel had requested a hearing in three separate correspondences, but Christensen had received no response. The letters enclosed a formal Request for Hearing before the Department of Veterans Affairs to consider and determine (1) the reasons for denial of hearing based on three previous written requests dated March 30, August 2, and September 14, 2004; (2) the existence or the amount of the debt alleged and the terms of the repayment schedule; (3) the appropriateness and amount of any administrative offset from Christensen's retirement pay; (4) the failure of the Creditor Agency to provide Christensen an opportunity to inspect and copy records relating to his debt; (5) Christensen's request for immediate suspension and delay of the offset pending the outcome of his Complaint; and (6) an award of attorney's fees. (A.R. 54-58.)

## II.    Procedural Posture

Christensen's Amended Complaint alleges three counts: Count I for a failure to hold an administrative hearing in violation of the Federal Debt Collection Improvement Act of 1996 (FDCIA), 31 U.S.C. §§ 3720D(b)(5) and 3720D(c)(1)-(2); Count II for excess garnishment of disposable pay in violation of the FDCIA, 31 U.S.C. § 3720D(b)(1); and Count III for violation of his Fifth Amendment Due Process rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971).[2] Notwithstanding the statutory basis enumerated in each Count, Defendants characterize Christensen's entire Complaint as seeking judicial review of an administrative decision under the Administrative Procedure Act (APA), 5 U.S.C. 701 et seq. In essence, Defendants argue that Christensen's Amended Complaint is an appeal of the VA's decision to deny his request for waiver of his Special Pay liability. As such, they have asked the Court to show deference to the Agency and affirm its administrative decision.

The Court cannot agree with Defendants' characterization of Christensen's Complaint. Whether it was arbitrary and capricious for the Under Secretary of Health to deny Christensen's request for a waiver of his Special Pay liability is not the crux of this case. Christensen has sued to vindicate his right to an administrative hearing before being garnished, his right not to be garnished in excess of 15 percent of his disposable pay, and his right to due process under the Fifth Amendment of the United States Constitution. The crux of his claims, therefore, is whether he received due procedure before he was deprived of property and whether that deprivation exceeded the limits imposed by law. As the Defendants do address the merits of these issues in the process of arguing for judicial deference to an administrative decision, the Court will treat their Motion to Affirm the Administrative Decision as a Motion for Summary Judgment.

### III. Discussion

---

[2] Count III of Christensen's Amended Complaint actually raises claims under 42 U.S.C. § 1983; however, as the Defendants are an agency and two officials of the United States, the Court will consider his well-pleaded complaint to allege a *Bivens* action rather that a § 1983 action.

### A. Defendants James Nicholson and Kent Hill

As an initial matter, Defendants Nicholson and Hill argue that they are not proper defendants. They raised this argument several months ago in a Motion to Dismiss [Doc. # 25]. Following a telephone conference on the issue on November 29, 2005, the Court denied the Motion to Dismiss without prejudice and advised the Defendants that they could raise the argument later in a Motion for Summary Judgment. Defendants have now done so, but they have not offered any additional arguments beyond those the Court already rejected in their original motion. Once again Nicholson and Hill argue that the APA provides that "an action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer." *Drummond v. U. S. Attorney General*, 37 F.3d 1503 (Table) (8th Cir. 1994) (unpublished and found at 1994 WL 556781 at *1) (quoting 5 U. S. C. § 703). They contend that Dr. Christensen's complaint does not allege that Defendants Nicholson and Hill were involved in the offset of monies from Dr. Christensen's retirement benefits or explain how they are "appropriate officials" within the meaning of the APA. However, they offer no legal argument why the head of the agency allegedly depriving Christensen of due process is not an appropriate official for Christensen to seek to enjoin. Nor do they offer any legal argument why the Director of the Hospital who sent the demand letter warning of administrative offsets is not an appropriate official for Christensen to seek to enjoin. At best, the joinder of these Defendants is superfluous since Christensen has also sued the United States itself, but an abundance of caution is not a basis for summary judgment. To

10

the extent that the Motion seeks dismissal of Nicholson and Hill, the Motion will be denied.

### B. Right to a Hearing

Christensen argues that the VA was required to grant him a hearing before garnishing his pay under Federal Debt Collection Improvement Act of 1996 (FDCIA). Specifically, the FDCIA provides:

> (b) In carrying out any garnishment of disposable pay of an individual under subsection (a), the head of an executive, judicial, or legislative agency shall comply with the following requirements: . . . (5) The individual shall be provided an opportunity for a hearing in accordance with subsection (c) on the determination of the head of the executive, judicial, or legislative agency concerning--
> (A) the existence or the amount of the debt, and
> (B) in the case of an individual whose repayment schedule is established other than by a written agreement pursuant to paragraph (4), the terms of the repayment schedule.

31 U.S.C. §§ 3720D(b)(5). The FDCIA further provides:

> (1) A hearing under subsection (b)(5) shall be provided prior to issuance of a garnishment order if the individual, on or before the 15th day following the mailing of the notice described in subsection (b)(2), and in accordance with such procedures as the head of the executive, judicial, or legislative agency may prescribe, files a petition requesting such a hearing.
>
> (2) If the individual does not file a petition requesting a hearing prior to such date, the head of the agency shall provide the individual a hearing under subsection (a)(5) [subsection (b)(5)] upon request, but such hearing need not be provided prior to issuance of a garnishment order.

31 U.S.C. § 3720D(c)(1)-(2).

Additionally, Christensen cites the March 11, 2004, demand letter from the Kansas City VA Medical Center which provided:

11

> You are entitled to a hearing to dispute the amount of your payroll deduction. To request a hearing, you must file a written request for a hearing no later that 15 days from the date of this letter to prevent referral of your debt to the Treasury Department. Written requests for a hearing must be sent to the above address.

(A.R. 52.) Christensen claims he sent several requests for a hearing to the Kansas City VA Medical Center, as directed in the March 11 letter, but received no response.

Defendants claim that the withholding of monies from Christensen's retirement payments is not a garnishment under 31 U.S.C. § 3720D, but an administrative offset under § 3716(a). (Unlike garnishments, administrative offsets don't require a hearing.) They further claim that the March 11, 2004, letter from the Kansas City VA Medical Center, advising Christensen of his right to a hearing, was sent "in error" or, alternatively, was "the wrong form letter to be sent" or, in the third alternative, did not provide for an "oral" hearing even if Christensen were entitled to some form of hearing.

Assuming for the sake of argument that the withholdings from Christensen's retirement payments are properly characterized as administrative offsets rather than garnishments, § 3716(a) provides:

> The head of the agency may collect by administrative offset only after giving the debtor– (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section.

With the exception of the March 11 letter from the Kansas City VA Medical Center, which the Defendants now disavow as "sent in error," none of the correspondence sent by the VA to Christensen gives notice of its intention to seek administrative offset. The February 10, 2004, letter asks only for a check or an installment plan. (A.R. 48.) The

12

April 8, 2004, letter again demands payment and does indicate that, "In accordance with the Notice of Rights and Obligations sent with the bills, this debt will be collected from your retirement pay." (A.R. 53.) However, it does not indicate that the debt would be collected by administrative offset. The referenced "Notice of Rights and Obligations" was sent on September 15, 2003, four and a half months before Christensen's waiver was denied. That "Notice" does not mention an administrative offset either as required by § 3716(a). It does indicate that, "If we do not receive your waiver request within 30 days, we will begin to withhold 15% of your disposable pay . . . ." (A.R. 33.) This 15 percent figure is consistent with garnishment under § 3720D rather that the 25 percent offset which the agency actually pursued. In short, if the VA's withholding of Christensen's debt from his retirement payment is an administrative offset rather than a garnishment, the VA failed to give Christensen proper notice as required by law. At the very least, this raises a genuine issue of fact precluding summary judgment as to Counts I and III.

### C. Excessive Garnishment

As explained above, it is unclear from the Administrative Record before the Court whether the 25 percent withholdings from Christensen's retirement payments are an administrative offset or a garnishment. If it is a garnishment, then the VA has exceeded the 15 percent limit on such withholdings imposed by 31 U.S.C. § 3720(b)(1) ("The amount deducted under this section for any pay period may not exceed 15 percent of disposable pay."). If the withholding is an administrative offset, as argued by the Defendants, then it was undertaken without affording Christensen the proper notice

required by 31 U.S.C. 3716(a). At the very least, there is a dispute of material fact precluding summary judgment as to all three Counts.

**IV.     Conclusion**

Accordingly, it is hereby

ORDERED that Defendants' Motion to Affirm the Administrative Decision [Doc. # 34] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: March 23, 2006  
Jefferson City, Missouri